UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____           │
│ DATE FILED:  __08/26/2021__          │
└─────────────────────────────────────┘
```

SHAKUR JAHAD,

                  Plaintiff,

        -against-

E. HOLDER, MEDICAL DOCTOR –
ARTHROSCOPIC SURGEON; N. MUTHRA,
MEDICAL DOCTOR – PRIMARY
PHYSICIAN,

                  Defendants.

19-CV-4066 (NSR)

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

Plaintiff Shakur Jahad ("Plaintiff"), currently incarcerated at Sing Sing Correctional Facility ("Sing Sing"), brings this *pro se* action under 42 U.S.C. § 1983 ("Section 1983") for alleged constitutional violations of the Eighth Amendment. (Plaintiff's Complaint ("Compl.") (ECF No. 2) at 4, 10.). Plaintiff asserts these claims against Jonathan Holder, M.D. ("Dr. Holder") and N. Muthra, M.D. ("Dr. Muthra") (collectively, "Defendants") alleging that they failed to diagnose and treat an infection he developed in his right knee after surgery.

Presently before the Court is Defendants' motion to dismiss the Complaint. (ECF No. 20.) For the following reasons, the motion is GRANTED.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint, his opposition to the instant motion to dismiss[1], and the documents attached as exhibits thereto[2], and are accepted as true for purposes of this motion.

### I.    Plaintiff's 2018 Surgery and Immediate Post-Surgical Complications

On an unspecified date prior to December 11, 2018, Dr. Muthra, Plaintiff's primary care physician at Sing Sing, referred Plaintiff to a surgeon, Dr. Holder, for arthroscopic surgery on his right knee.  (Compl. at 4.)  On December 11, 2018, the procedure was performed by Dr. Holder at Mount Vernon Medical Hospital.  (*Id.*)

Over the next month, Plaintiff allegedly developed post-operative issues—chiefly an infection of his right knee that caused swelling and severe pain—that he complained about to Defendants during follow-up medical appointments.  (*Id.*)  First, on or around December 15, 2018, Dr. Muthra examined Plaintiff, determined there was no problem, and refused to write a prescription for antibiotics despite Plaintiff's allegation that his knee had become as large as a "cantaloupe" and that he suffered from such excruciating pain that he could no longer walk without an aid.  (*Id.*)  Later, on or around Defendant 19, 2020, Dr. Muthra removed Plaintiff's stitches.  (*Id.*)  When the first stitch was removed, Plaintiff's knee began to leak discharge.  (*Id.*)  In order

---

[1] After filing his opposition to the instant motion, ECF No. 18, Plaintiff filed a second document, dated December 9, 2020, entitled Plaintiff's Reply.  (ECF No. 19.)  The filing of a sur-reply was not authorized by this Court when it issued its Memorandum Endorsement dated September 30, 2020 and established the operative briefing schedule.  (ECF No. 17.)  Pursuant to that Endorsement, Plaintiff was authorized to submit a single opposition brief on or before December 9, 2020.  If Plaintiff desired additional papers, he could have sought leave from the Court.  Accordingly, Plaintiff's sur-reply was not authorized, the Court strikes it, and does not consider it in resolving the instant motion.  As an additional matter, the unauthorized sur-reply was docketed in a manner that made it impossible to read.

[2] When a plaintiff proceeds *pro se*, a court "may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (citing *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)).  For purposes of this motion, the Court accepts as true the factual allegations in the complaint and the opposition papers, to the extent that they are consistent, and draws all reasonable inferences in Plaintiff's favor.

to monitor the discharge from his knee, Plaintiff was sent to Mount Vernon Medical Hospital on December 25, 2018.  (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp.") (ECF No. 18) at 20.)  He was discharged the same day and admitted to the Sing Sing infirmary where his wound was bandaged, and discharge continued to drain from his knee.  (*Id*.)

By the next day, Plaintiff's dressing was "soaked" in "discharge," and he was set up with an appointment to see Dr. Holder.  (*Id*.)  During Plaintiff's follow-up appointment with Dr. Holder on December 27, 2018, Dr. Holder noted that the incisions had healed with no drainage, and he performed an aspiration of his knee which showed "straw-colored turbid watery fluid."[3]  (*Id*. at 25.)  The fluid was obtained and sent for testing.  (*Id*.)

After the appointment, Plaintiff was readmitted to the Sing Sing infirmary and his condition was monitored.  (*Id*. at 22-23.)  On December 29, 2018, Plaintiff's knee was swollen and warm, there was no further drainage noted, and Plaintiff could walk with the assistance of a cane.  (*Id*. at 23.)  Several days later, on January 2, 2019, Plaintiff's knee remained swollen and painful, the incision was healing, and Plaintiff could walk slowly with a limp.  (*Id*. at 22.)  Dr. Muthra instructed Plaintiff to remove the wraps on his knee to reduce the swelling.  (*Id*.)

On January 3, 2019, Plaintiff had a follow-up appointment with Dr. Holder.  (*Id*. at 28.)  Here, Dr. Holder analyzed the results of the fluid analysis, and suggested Plaintiff take Toradol for five days.  (*Id*.)  On January 8, 2019, Plaintiff was back in the Sing Sing infirmary with mild

---

[3] In the Complaint, Plaintiff alleges that "on or about the 8th day of January [2]019" he was sent to Mount Vernon Medical Hospital where "five (5) pints of pus" was removed from his knee.  (Compl. at 4.)  Per the submissions filed with Plaintiff's opposition, the Court understands this to have occurred on December 27, 2018, when Dr. Holder aspirated his knee. (Pl.'s Opp. at 25.)  Plaintiff was in the Sing Sing infirmary on January 8.  (*Id*. at 21.)  *See TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.").

swelling, but his wound had healed, he was taking Toradol, and he was walking without complications with a cane.  (*Id*. at 21.)

## II.     Plaintiff's Continued Medical Issues and Grievance in 2020

One year after Plaintiff's surgery, he continued to suffer from pain in his right knee and sought further medical attention from various doctors.  Plaintiff attended an appointment with Dr. Holder on March 12, 2020.  (*Id*. at 18.)  At this appointment, Dr. Holder did not have Plaintiff's entire chart available for review.  (*Id*.)  Dr. Holder noted that Plaintiff had previously had a possible infection and that he conducted an aspiration of his knee in 2018, but that the results from the fluid testing were not available for him to review.  (*Id*.)  Plaintiff reported increased pain, and Dr. Holder recommended he continue using pain medication, and consider using a cane or supportive brace. (*Id*.)

On March 23, 2020, Plaintiff filed a grievance about the medical care he was provided. (*Id*. at 11.)  In his grievance he noted, among other things, that he: (1) liberally advised others that he was suffering from swelling and pain in his right knee, (2) did not receive adequate care from Dr. Holder because Dr. Holder did not have any of his paperwork and made an unsatisfactory prognosis when he told Plaintiff to use a knee brace and take Ibuprofen, and (3) requested an MRI to help diagnose what is causing his pain and suffering.  (*Id*.)  On June 4, 2020, the grievance was denied, and Plaintiff was advised to address any concerns he had with his medical provider.  (*Id*. at 10.)  Plaintiff appealed this decision, which was upheld.  (*Id*. at 13.)

As of the filing of the Complaint, Plaintiff continued to suffer from chronic pain and swelling in his knee, which caused him discomfort walking, standing, and sleeping.  (Compl. at 5; Pl.'s Opp. at 4.)  Despite the attention to his knee issues, there appears to be uncertainty as to the underlying cause of his infection as the Defendants were allegedly "in disagreement as to who

[caused] the infection and as to who should treat the infection." (Pl.'s Opp. at 2.) The issues with his knee were sufficiently dire that, at some point not clear from the Complaint, he was purportedly "close to having his leg amputated." (Compl. at 4.) Plaintiff further voiced objections to his course of treatment because, while Dr. Holder prescribed an injection to ease his pain and swelling, Dr. Muthra failed to write an order allowing Plaintiff to participate in physical therapy. (Compl. at 5.) Finally, Plaintiff was placed on a waiting list for another specialist, and has been unable to obtain treatment from another specialist for years. (Pl.'s Opp. at 4.) Plaintiff requests (1) an order stating the Defendants were negligent and caused his infection; (2) an order granting Plaintiff an appointment with a specialist; (3) an injunction "be put in place by the Court until either his classification changes to medium security for transfer or he is subsequently released"; (4) *pro bono* counsel; and (5) compensatory damages in the amounts of $200,000 against both Dr. Holder and Dr. Muthra, $200,000 jointly and severally between both Defendants, and $5,000 for his time and effort. (*Id*. at 2-3.)

## LEGAL STANDARDS

*Fed. R. Civ. P. 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal

conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555).  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion.  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  Further, courts must interpret the *pro se* plaintiff's pleadings "to raise the strongest arguments that [it] suggest[s]."  *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted).  Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 223 (S.D.N.Y. 2010) (citing *Twombly*, 550 U.S. at 555), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

*Section 1983*

Section 1983 provides that "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. Cty. of Oneida*, 375 F.3d 206, 225

(2d Cir. 2004).  To state a claim under Section 1983, a plaintiff must allege (1) "the challenged conduct was attributable to a person who was acting under color of state law" and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York.*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

## DISCUSSION

The Court interprets Plaintiff's Complaint to allege claims against both Defendants for deliberate indifference to medical needs pursuant to Section 1983, in violation of the Eighth Amendment.  (Compl. at 4; Pl.'s Opp. at 1.)  Defendants argue that Plaintiffs' claims should be dismissed because Plaintiff fails to allege a cognizable constitutional violation.  (Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Mot.") (ECF No. 21) at 4-9.)  As discussed below, the Court agrees with the Defendants.

### I.    Eighth Amendment

Plaintiff characterizes his cause of actions as a deliberate indifference claim brought under the Eighth Amendment.  Deliberate indifference claims brought by pretrial detainees are governed by the Fourteenth Amendment, while claims brought by post-trial detainees are governed by the Eighth Amendment.  *Haynes v. City of N.Y.*, 19 Civ. 1925 (NRB), 2020 WL 4926178, at *6 (S.D.N.Y. Aug. 20, 2020).  While Plaintiff does not affirmatively state that he is a post-trial detainee, all parties, including Plaintiff, address their motion papers towards the application of the Eighth Amendment, and therefore the Court will not *sua sponte* address the application of the Fourteenth Amendment.  For the purposes of this motion, Plaintiff is a post-trial detainee, and therefore the Eighth Amendment is operative here.

The Eighth Amendment guarantees freedom from "cruel and unusual punishment." U.S. Const. amend. VIII. This includes depriving prisoners of their "basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Serv.*, 489 U.S. 189, 200 (1989)). For a plaintiff to establish that a prison official violated the Eighth Amendment, "(1) the alleged deprivation must, as an objective matter, be 'sufficiently serious,' [*i.e.*, the "objective prong"] and (2) the alleged perpetrator—ordinarily a prison official—must possess a 'sufficiently culpable state of mind.' [*i.e.*, the "subjective prong."]" *Randle v. Alexander*, 960 F. Supp. 2d 457, 470 (S.D.N.Y. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

To determine whether a deprivation of medical care is "sufficiently serious," the Court must "(1) determine whether the medical care was inadequate, and, (2) if so, '[] examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.'" *Taft v. Fricke*, No. 9:17-CV-0346 (GTS/CFH), 2019 WL 5197180, at *7 (N.D.N.Y. July 26, 2019) (citing *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. Oct. 27, 2006)). To assess the adequacy of care a claimant received, the Court must determine whether the prison official provided "reasonable care." *Salahuddin*, 467 F.3d at 279.

The next step in determining whether a claimant's deprivation was sufficiently serious depends on the type of claim they are making. If the claimant is alleging the prison official failed to provide any treatment at all, "courts examine whether the inmate's medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280. To establish that a medical condition was "sufficiently serious" a plaintiff must allege "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Coke v. Med., Dep't of Corr. & Cmty. Supervision*, 17 Civ. 0866 (ER), 2018 WL 2041388, at *3 (S.D.N.Y. Apr. 30, 2018). There are several factors that the court

may consider when deciding whether a medical condition is "sufficiently serious," including "chronic and substantial pain or the presence of a medical condition that significantly affects an individual's daily activities." *Salgado v. DuBois*, 17-cv-6040 (NSR), 2019 WL 1409808, at *5 (S.D.N.Y. Mar. 28, 2019).

If the claimant concedes that he received medical treatment but alleges that it was inadequate, "the inquiry is narrower, and the court should focus on the specific inadequacy of the treatment, not the underlying medical condition alone." *Taft*, 2019 WL 5197180, at *7.

For the subjective prong, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety" that would result from his or her act or omission. *Jones v. Avanzato*, No. 14-cv-2044 (NSR), 2016 WL 183565 at *3 (S.D.N.Y. Jan. 13, 2016) (citing *Farmer*, 511 U.S. at 837). Medical malpractice "does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—'an act or a failure to act by [a] prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'" *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)) (internal quotation marks omitted). Therefore, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id*. (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The Court applies this framework to each of the two defendants separately.

### A.    Dr. Muthra

Plaintiff claims that Dr. Muthra failed to provide him medical care when he: (1) observed his infected knee shortly after surgery and neglected to treat it, and (2) refused to write an order

for him to participate in physical therapy even though he is currently suffering from chronic pain and swelling in his knee. [4]  (Compl. at 4-5.)

In response, Defendants argue that Plaintiff fails to satisfy the second prong of the test, as (1) "medical indifference is not based on disagreements between an inmate and a medical provider about course of treatment or form of treatment, need for specialists or timing of their intervention," (2) he did not believe anything was wrong with Plaintiff's knee, and (3) any treatment provided to Plaintiff was "within [his] medical discretion."  (Defs.' Mot. at 7-9.)  For the reasons discussed below, the Court agrees with Defendants.

### 1.    Objective Prong

Plaintiff's claims against Dr. Muthra, in part, satisfy the objective prong.  As discussed below, the Court finds that Plaintiff failed to state a sufficiently serious deprivation of medical care with respect to his infection, but has articulated a sufficiently serious deprivation with respect to his chronic pain condition.

Severe infections that cause chronic pain or substantial risk of injury may constitute a sufficiently serious condition so as to give rise to an Eighth Amendment claim where inadequate medical treatment is also alleged.  *See Smith v. Carpenter,* 316 F.3d 178, 186 (2d Cir. 2003) ("[T]he failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment."); *Forbes v. Chakravorty*, 13 Civ. 8776 (LAP), 2015

---

[4] Plaintiff also argues in his opposition that both Defendants provided him inadequate medical care during his surgery, because he developed an infection.  (Pl.'s Opp. at 1.)  However, none of Plaintiff's allegations or documents show that Dr. Muthra was present during his surgery or participated in any way before Plaintiff's knee was bandaged.  If Dr. Muthra was not present, his actions could not have contributed to Plaintiff developing an infection.  Plaintiff has failed to plead any facts to support his conclusory claim that Dr. Muthra's inadequate medical care caused his infection.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotations omitted).

U.S. LEXIS 114967, at *13–14 (S.D.N.Y. Aug. 18, 2015) (describing a "severe infection" that disrupted the inmates "daily activities" and caused him "chronic and substantial pain" as a "sufficiently serious" medical condition); *Hardy v. City of New York*, 732 F. Supp. 2d 112, 131–32 (E.D.N.Y. 2010) (holding an ear infection that caused "unbearable" pain, swelling and drainage satisfied the objective prong of the Eighth Amendment deliberate indifference claim).

Further, "serious physical pain over an extended period of time" may be sufficiently serious where medical care has been deprived.  *Dennis v. Milicevic*, No. 97 CIV. 7147(HB), 1998 WL 474200, at *3 (S.D.N.Y. Aug. 13, 1998).  The Second Circuit has found that serious pain lasting over six months was sufficient for a deliberate indifference claim.  *Chance v. Armstrong*, 143 F.3d 698, 702–03 (2d Cir. 1998).  Where, as is the case here, medical treatment was only denied for a short period of time, the objective prong is not typically satisfied.  For example, in *Medina v. Barrett*, the court found that the plaintiff failed to satisfy the objective prong where he allegedly was denied medical care for four weeks despite experiencing "severe and chronic headaches, nerve damage, and neck and knee pain," because four weeks "is too short to satisfy the objective prong." Case # 14-CV-6377-FPG, 2018 WL 1383232, at *6 (W.D.N.Y. Mar. 19, 2018).

Here, Plaintiff's argument that he was denied treatment for an infection in his right knee is contradicted by his own pleadings and incorporated exhibits.  Plaintiff's submissions demonstrate that he was provided medical care in response to his infection shortly after his surgery.  For example, Dr. Muthra examined his swollen and painful knee on or around December 15, 2018 and noticed his knee drained fluid shortly thereafter.  (Compl. at 4.)  Plaintiff was sent to Mount Vernon Medical Hospital on December 25 to have his knee examined, and then subsequently discharged to the Sing Sing infirmary where he continued to receive care for the infection.  (*Id*.; Pl.'s Opp. at 22-23.)  At best, Dr. Muthra denied treatment to Plaintiff from December 11, 2018 through

December 25, 2018.  As discussed above, a denial of treatment for such a brief period of time is plainly insufficient to satisfy the objective prong.

On the other hand, Plaintiff has articulated a sufficiently serious deprivation with respect to the lack of treatment he has received for his chronic pain and swelling in his right knee.  Among other things, Plaintiff alleges that Dr. Muthra refused to write an order for physical therapy even though Plaintiff suffered from chronic pain and swelling in his right knee over the course of an extended period of time.  (Compl. at 5.)  It has been over two years since Plaintiff's surgery, and throughout this time he allegedly suffered from debilitating pain and swelling in his right knee, and struggled to walk, stand, and sleep.  (Pl.'s Opp. at 4.)  Plaintiff's condition causes him substantial pain, and significantly affects his daily activities.  *See Veras v. Jacobson,* No. 18-CV-6724 (KMK), 2020 WL 5659551, at *6 (S.D.N.Y. Sept. 23, 2020) (holding the plaintiff adequately alleged dental pain was sufficiently serious as he endured "excessive/extreme mouth pain, headaches, and an inability to do normal and basic activities such as eating without pain, and having a pain-free conversation") (internal citations omitted); *De Jesus v. Albright,* No. 08 Civ. 5804 (DLC), 2011 WL 814838, at *9 (S.D.N.Y. Mar. 9, 2011) (holding the plaintiff alleged s sufficiently serious deprivation where his headaches caused him "severe and constant pain" which would make him "unable to work, read, write, or leave his cell").  The Court finds that Plaintiff's current condition is sufficiently serious.  Therefore, the Plaintiff has successfully alleged a sufficiently serious deprivation caused by Dr. Muthra's failure to provide medical care.

### 2.    *Subjective Prong*

Plaintiff's claims against Dr. Muthra fail the second prong of the deliberate indifference test.  Plaintiff has failed to allege facts sufficient to support a finding that Dr. Muthra acted with a

state of mind equivalent to criminal recklessness when he failed to provide medical care. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

In order to satisfy the subjective prong, a plaintiff must allege that the defendant's failure to provide medical treatment was more than mere negligence. *Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."); *Hill*, 657 F.3d at 123 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Instead, the defendant must act with deliberate indifference, or "culpable recklessness." *Hill*, 657 F.3d at 123. In order to plead culpable recklessness based on a defendant's denial of treatment, a plaintiff must, at a minimum, allege that the defendant knew that a substantial risk could result from the denial of treatment. *See Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996) ("[A] prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm . . . .") (internal citations omitted); *Hart v. Goord*, No. 08CV681, 2011 WL 1198414, at * (W.D.N.Y. Jan. 13, 2011) ("[S]ubjective recklessness can satisfy the deliberate indifference standard only where the official has actual knowledge that the prisoner faced a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.") (internal citations omitted).

Here, Plaintiff only alleges that Dr. Muthra "acted negligently" as he "neglected to treat the infection" (Pl.'s Opp. at 1) and thus Plaintiff failed to allege deliberate indifference with respect to the treatment of Plaintiff's infection. Likewise, as discussed above, any contention that Dr. Muthra acted with deliberate indifference is contradicted by Plaintiff's pleadings as, by Plaintiff's

own admission, shortly after notifying Dr. Muthra about the possible infection, he was sent to Mount Vernon Medical Hospital and had an appointment with Dr. Holder.

Likewise, Plaintiff's allegation that Dr. Muthra "neglected" to provide him an order for physical therapy even though he suffered from consistent pain and swelling (Compl. at 5) is insufficient to satisfy the subjective prong. It is not clear from the Complaint that Plaintiff notified Dr. Muthra about his continued issues or sought any additional treatment from Dr. Muthra after being treated by Dr. Holder. It is also not clear from the Complaint when, if ever, Plaintiff requested physical therapy from Dr. Muthra, and why he determined it was not medically necessary. Therefore, the Court cannot find that Dr. Muthra acted with deliberate indifference when he failed to write an order for physical therapy, as Plaintiff has failed to show he had knowledge of his condition, much less that Dr. Muthra was aware of a substantial risk of harm that might result from denying the requested physical therapy.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim against Dr. Muthra, and dismisses claims against Dr. Muthra without prejudice.

## B.     Dr. Holder

Plaintiff claims that Dr. Holder failed to provide him adequate medical care when he (1) allowed the infection to happen, and (2) denied the existence of the infection. (Compl. at 4-5; Pl.'s Opp. at 1.) Defendants argue that the claims against Dr. Holder fail because there are no allegations that he was "aware of any of the post-operative complaints," and any treatment provided to Plaintiff was "within [his] medical discretion." (Defs.' Mot. at 8-9.) Assuming that Dr. Holder was acting under the color of state law when he performed the surgery[5], the Court nonetheless

---

[5] Plaintiff does not affirmatively plead whether Dr. Holder is employed by Sing Sing (or DOCCS) or a separate private entity referred to as Mount Vernon Medical Hospital, and Defendants do not facially challenge whether Dr. Holder, to the extent he is not employed by the state, acted under color of state law when he performed any relevant conduct at issue in this litigation. Regardless, for the purposes of this motion only, Dr. Holder can be

concludes that Plaintiff has failed to plausibly allege an Eighth Amendment claim against Dr. Holder.

### 1. Objective Prong

Dr. Holder performed Plaintiff's knee surgery, and shortly thereafter Plaintiff developed an infection causing him pain and discomfort.  As an initial matter, the fact that a patient developed an infection after surgery, by itself, cannot underly an Eighth Amendment deliberate indifference claim.  *See Marquez v. McEwen*, Case No. CV 15–7911 R (SS), 2017 WL 5197161, at *6 (C.D. Cal. Sept. 7, 2017) ("An infection following medical treatment is not, by itself, evidence that a particular treatment was constitutionally inadequate.").  Without more, Plaintiff's conclusory claim that Dr. Holder caused his infection during the surgery fails the first prong.

Further, Plaintiff's contention that he was provided inadequate care after his surgery because Dr. Holder "denied the existence of the infection" is contradicted by his own pleadings which demonstrate that Dr. Holder examined Plaintiff multiple times, ran tests on the fluid in his knee, and provided him with medication.  (Pl.'s Opp. at 25, 28.)  In contrast to Dr. Muthra, the record shows that Dr. Holder did not ignore Plaintiff's pain and provided him with both medication and an injection.  (*Id.*; Compl. at 5.)  As Plaintiff was not denied adequate medical care from Dr. Holder, his claims fail the first prong of the deliberate indifference test.

### 2. Subjective Prong

Even if Plaintiff's claims against Dr. Holder were to pass the first prong, they would fail the second prong of the deliberate indifference test.  Plaintiff has failed to allege facts sufficient to

---

said to have acted under color of state law.  *See Bektic-Marrero v. Goldberg,* 850 F.Supp.2d 418, 427 (S.D.N.Y. 2012) ("[C]ourts in this Circuit sometimes find state action even in cases where the medical care was administered away from the prison.")

support a finding that Dr. Holder acted with a state of mind equivalent to criminal recklessness when treating Plaintiff.  *Hathaway*, 99 F.3d at 553.

There are no facts alleging that Dr. Holder acted with recklessness, or even negligence, when performing the surgery that developed the infection.  In his opposition, Plaintiff alleges that "postoperative negligence/malpractice" occurred before his wound was bandaged, which resulted in the infection.  (Pl.'s Opp. at 1.)  Notwithstanding that this is a wholly conclusory statement, Plaintiff uses an incorrect standard for his claim.  The standard for the Eighth Amendment is deliberate indifference, not negligence or malpractice.  As discussed above, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."  *Hill*, 657 F.3d at 123.

Plaintiff also fails to allege that Dr. Holder acted with deliberate indifference when he refused to acknowledge that he had an infection.  (Pl.'s Opp. at 1.)  The Complaint does not show that Dr. Holder had any knowledge of the possible infection until his first follow-up appointment with Plaintiff, which appears to have occurred on December 27, 2018, 19 days after his surgery, and around 12 days after Plaintiff alerted Dr. Muthra.  As discussed above, deliberate indifference requires knowledge about the inmate's condition.  *Hayes*, 84 F.3d at 620.  Plaintiff cannot claim that Dr. Holder failed to provide medical care during this time, as the facts do not show that he was aware of any issue.

Lastly, to the extent that Plaintiff is alleging he was provided inadequate care during a follow-up appointment when Dr. Holder was unable to review Plaintiff's full medical file and was therefore unable to confirm the existence of the infection or the results of the aspiration, Plaintiff's claim fails.  During this appointment, Dr. Holder spoke to Plaintiff about his condition, examined him, and provided recommendations for treatment.  (Pl.'s Opp. at 18.)  The inability to review an

inmate's medical file before an appointment does not rise to the level of recklessness.  *See Jackson v. Loricchoandola*, 9:17-CV-0968 (GLS/ATB), 2018 WL 704863, at *4 (N.D.N.Y. Feb. 2, 2018) (holding the plaintiff failed to plead sufficiently culpable recklessness where he alleged that a doctor failed to review his medical file).  Plaintiff has not shown that Dr. Holder acted with recklessness or deliberate indifference, and therefore his claims fail the second prong of the test.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim against Dr. Holder, and dismisses claims against Dr. Holder without prejudice.

## II.     Dismissal Without Prejudice

In their reply, Defendants argue that the Court should dismiss Plaintiff's claims with prejudice, as "amendment is futile."  (Defendant's Reply ("Defs.' Rep.") (ECF No. 22) at 4.)  As Defendants state, generally *pro se* plaintiffs are allowed an opportunity to amend their complaint before the Court will dismiss it with prejudice.  *Owens v. N.Y.C. Dep't of Sanitation*, No. 11 Civ. 8297(ALC), 2013 WL 150245, at *3 (S.D.N.Y. Jan. 15, 2013) ("[A] court should grant leave to amend [to a pro se litigant] at least once before dismissing [a complaint] with prejudice");  *Breer v. Maranville*, Civil Action No. 2:12-CV-53, 2012 WL 6597707, at *3 (D. Vt. Nov. 27, 2012) ("The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal quotations omitted).  As Plaintiff has not yet had an opportunity to amend his Complaint, the Court will not deny Plaintiff's claims with prejudice.

## III.    Injunctive Relief

Though the nature of the relief requested is unclear, Plaintiff requests "an injunction to be put in place by the Court until either his classification changes to medium security for transfer or

he is subsequently released" in his opposition papers.  (Pl.'s Opp. at 2.)  Plaintiff's request is denied.

In the Second Circuit, a party seeking a preliminary injunction "must demonstrate that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party." *Mullins v. City of New York*, 626 F.3d 47, 52–53 (2d Cir. 2010).  Where a party seeks a mandatory injunction "altering, rather than maintaining, the status quo," such as in this case, that party "must meet [a] more rigorous standard."  *Almontaser v. N. Y. City Dep't of Educ*., 519 F.3d 505, 508 (2d Cir. 2008) (internal alterations omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entm't, Inc*., 60 F.3d 27, 33 (2d Cir. 1995).  ("[W]e have required the movant to meet a higher standard where . . . an injunction will alter, rather than maintain, the status quo . . . .").  The moving party must establish a "clear or substantial likelihood of success," or show that "extreme or very serious damage" would result in the absence of preliminary relief.  *Tom Doherty Assocs*., 60 F.3d at 34; 37.

Plaintiff's request is denied as meritless.  Under Rule 12(b)(6), Plaintiff must only show that he has stated a claim to relief that is "plausible on its face."  *Ashcroft*, 556 U.S. at 678.  In contrast, the standard for a mandatory injunction is much higher, as Plaintiff must show a "substantial likelihood of success."  *Tom Doherty Assocs*., 60 F.3d at 34.  Given that Plaintiff has no surviving claims under Rule 12(b)(6), Plaintiff would fair even worse under the standard for an injunction.  Nor do Plaintiff's vague allegations about harm articulate extreme or very serious damage absent the (unclear) requested relief.

Accordingly, Plaintiff's request for a preliminary injunction is DENIED without prejudice.

## IV.    Request for Counsel

Lastly, Plaintiff requests in his opposition that he be appointed *pro bono* counsel.  (Pl.'s Opp. at 2.)  However, a motion for appointment of *pro bono* counsel must be brought in a separate motion.  *See Martin v. Mihalik*, 19-CV-7979 (PMH), 2021 WL 1738458, at *1 n.3 (S.D.N.Y. May 3, 2021).  Even if the Court were to consider the Plaintiff's request, it would be denied on the merits.

Unlike in criminal proceedings, the Court does not have the power to obligate attorneys to represent indigent *pro se* litigants in civil cases.  *See Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 308–09 (1989).  Instead, pursuant to 28 U.S.C. § 1915(e)(1), the Court may, at its discretion, order that the Pro Se Office request an attorney to represent an indigent litigant by placing the matter on a list circulated to attorneys who are members of the Court's pro bono panel.  *See Palacio v. City of New York*, 489 F. Supp. 2d 335, 344 (S.D.N.Y. 2007).

The Second Circuit set forth the standards governing the appointment of counsel in *pro se* cases in *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997), *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989), and *Hodge v. Police Officers*, 802 F.2d 58, 60–62 (2d Cir. 1986). These cases direct the district courts to "first determine whether the indigent's position seems likely to be of substance," *Hodge*, 802 F.2d at 61, and then, if this threshold is met, to consider "secondary criteria," including the *pro se* litigant's "ability to obtain representation independently, and his ability to handle the case without assistance in the light of the required factual investigation, the complexity of the legal issues, and the need for expertly conducted cross-examination to test veracity."  *Cooper*, 877 F.2d at 172; *accord Hendricks*, 114 F.3d at 392 (quoting *Hodge*, 802 F.2d at 61–62). "Even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim."  *Hodge*, 802 F.2d at 60-61.

Plaintiff's application for appointment of *pro bono* counsel is his first request.  At this stage in the proceedings, there is no indication that Plaintiff's position is likely to be of substance. *Stewart v. McMickens*, 677 F. Supp. 226, 228 (S.D.N.Y. 1988) (holding that the "legitimacy of the case must be apparent from the face of the pleading").  As all of Plaintiff's claims have been dismissed under Rule 12(b)(6), Plaintiff does not have a chance of success unless he successfully amends his Complaint.  Accordingly, Plaintiff's motion for appointment of *pro bono* counsel is, at this time, DENIED without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED, and Plaintiff's requests for a preliminary injunction and *pro bono* counsel are DENIED.  Plaintiff is granted leave to file an Amended Complaint as to any claims that have not been dismissed with prejudice.  If he chooses to do so, Plaintiff will have until September 27, 2021 to file an Amended Complaint consistent with this order.  An Amended Civil Rights Complaint form is attached to this Order.  Defendants are then directed to answer or otherwise respond by October 27, 2021.

If Plaintiff fails to file an Amended Complaint within the time allowed, and he cannot show good cause to excuse such failure, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 20.  The

Clerk is also respectfully directed to mail a copy of this Opinion and Order to Plaintiff at the

address listed on ECF and to file proof of service on the docket.


Dated: August 26, 2021                              SO ORDERED:
       White Plains, New York

                                            _____
                                                   NELSON S. ROMÁN
                                               United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.



-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____
(Include case number if one has been
assigned)

**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

Rev. 5/20/16

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name                    Middle Initial                    Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                              State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

Page 2

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 4:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Page 3

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____